IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| DIABETES CENTERS OF AMERICA, INC., | § § | |
| Plaintiff, | § § | |
| v. | § | CIVIL CASE NO. H-06-3457 |
| | § | |
| HEALTHPIA AMERICA, INC., *et al.*, | § | |
| Defendants. | § | |

# MEMORANDUM AND ORDER

This hotly disputed case is before the Court on the Motion for Sanctions (Spoliation and Discovery Abuse) ("Plaintiff's Motion") [Doc. # 78] filed by Plaintiff Diabetes Centers of America, Inc. ("DCOA") and the Motion for Sanctions (Spoliation and Discovery Abuse) ("Defendants' Motion") [Doc. # 128] filed by Defendants Healthpia America, Inc. ("Healthpia") and Steven Kim.[1] The Court has reviewed the full record, conducted an evidentiary hearing on the sanctions motions, considered the arguments of counsel, and applied the governing legal authorities. The Court **denies** both motions.

---

[1] Defendants filed their Opposition [Doc. # 118] to Plaintiff's Motion, and Plaintiff filed its Reply [Doc. # 126]. Plaintiff filed its Opposition [Doc. # 134] to Defendants' Motion, and Defendants filed a Reply [Doc. # 161].

**I.      GENERAL BACKGROUND**

The factual and procedural background of this case has been set forth fully in prior decisions on motions to dismiss.  Briefly, DCOA is a full-service treatment center for persons with diabetes.  Healthpia is a company that develops and markets mobile healthcare devices.  Steven Kim is Healthpia's Chief Executive Officer.  One of Healthpia's main products, the GlucoPhone, is a cell phone designed to test and read a patient's glucose levels, store the test results, and transmit the test results to physicians or others designated by the patient.

DCOA filed this breach of contract lawsuit against Healthpia alleging that it ordered these "diabetic cell phones" from Healthpia, and that the phones were not delivered as required by the parties' written contract.  Healthpia filed a counterclaim.

The case has been quite contentious, and the Court has been required to intervene in several prior discovery disputes.  In the current motions for sanctions, each party seeks a spoliation instruction against the other, and each side seeks monetary sanctions against the other for discovery abuses.  The specific facts underlying the pending motions for sanctions will be discussed more fully below.  The motions have been fully briefed, they have been the subject of an evidentiary hearing and related argument of counsel, and they are now ripe for decision.

## II.   REQUESTS FOR SPOLIATION INSTRUCTION

Each party asks the Court to give the jury an instruction on spoliation against the opposing party. "A spoliation instruction entitles the jury to draw an inference that a party who intentionally destroys important documents did so because the contents of those documents were unfavorable to that party." *Russell v. Univ. of Texas of Permian Basin*, 234 F. App'x 195, 207 (5th Cir. 2007) (citing *Vick v. Texas Employment Comm'n*, 514 F.2d 734, 737 (5th Cir. 1975)). Such adverse-inference instructions are usually given in cases where the defendant destroys or materially alters evidence. *See, e.g., Russell*, 234 F. App'x at 207; *Escobar v. City of Houston*, 2007 WL 2900581, *17 (S.D. Tex. Sept. 29, 2007) (Rosenthal, J.). A party is entitled to a spoliation instruction only if the opposing party acted in "bad faith." *See Russell*, 234 F. App'x at 207-08 (citing *Condrey v. SunTrust Bank of Ga.*, 431 F.3d 191, 203 (5th Cir. 2003)). "'[M]ere negligence is not enough' to warrant an instruction on spoliation." *Id.* at 208 (quoting *Vick*, 514 F.2d at 737).

Plaintiff alleges that Defendants failed to back up emails that were subsequently lost when the two laptops containing the emails were stolen.[2] Steven Kim's laptop was stolen from a friend's car outside Kennedy Airport while he and his friend were loading

---

[2]   Plaintiff also questions whether these laptops were actually stolen by third parties.

Kim's bags into the trunk of the car. The laptop belonging to Douglas Kim (no family relation to Steven Kim) was stolen from his Healthpia office cubicle. Email retention on these laptops, although not backed up to a third party or Healthpia server, was handled in accordance with Healthpia's standard procedures.

Defendants allege that Plaintiff (specifically Dr. Kimon Angelides, founder and COO of Diabetes) failed to preserve and produce critical emails that were contrary to Plaintiff's position in this lawsuit. Specifically, Plaintiff has maintained throughout this lawsuit that it never agreed to the need for a "CRM" (customer relations management software), but Defendants claim that Plaintiff failed to produce emails that contradict that position. Defendants also claim that Plaintiff failed to produce copies of emails showing that Plaintiff was aware that its failure to provide certain security documentation was a major problem in getting certification from at least one cellular phone company. Defendants later obtained these emails from third parties, but they suspect there may be other similar communications that have been withheld or destroyed. Plaintiff's counsel conceded at the hearing that the task of searching Plaintiff's records for relevant emails in response to Defendants' discovery request was entrusted to a junior associate. It is apparent that the associate worked with little or no direction or supervision. The search terms used by the associate were inadequate –

they did not even include the term "phone" – and, as a result, she failed to locate or perceive the significance of the emails about which Defendants now complain.

Neither party has presented evidence of bad faith. The Court credits Defendants' evidence that the laptops were stolen, and not intentionally destroyed or hidden. Defendants may not have taken adequate steps to preserve emails through a back-up process, but Defendants followed the company's standard procedures. If anything, there has been a showing of negligence derived from lax electronic document maintenance procedures. Similarly, at most, Plaintiff's counsel may have been lax in that inadequate direction and oversight was given to the associate to guide her search for relevant and responsive emails. There is no evidence that he or the associate acted in bad faith. The Court, in an exercise of its discretion, denies both parties' requests for an instruction on spoliation.[3]

## III.   REQUEST FOR MONETARY SANCTIONS

### A.   Standard for Rule 37(d) Sanctions

Each party also seeks monetary sanctions from the other for expenses incurred as a result of the other party's alleged discovery abuses. A Court has discretion to

---

[3] The Court also declines to grant either party's request for an instruction on spoliation as a sanction for discovery abuse pursuant to Rule 37(d) of the Federal Rules of Civil Procedure. A Rule 37(d)-based instruction is unwarranted on the facts presented. *See* Section III.A., *infra*,

award fees and expenses resulting from discovery abuses in cases where no prior discovery order has issued. *See* FED. R. CIV. P. 37(d); *Coane v. Ferrara Pan Candy Co.*, 898 F.2d 1030, 1031 (5th Cir. 1990). A discovery abuse, whether a failure to provide discovery or a substantial delay in doing so, need not be willful in order to trigger Rule 37(d) sanctions. *See Coane*, 898 F.2d at 1032.

### B. Plaintiff's Allegations Regarding Defendants' Discovery Abuse

Plaintiff alleges that Defendants improperly withheld documents until the eve of Defendants' depositions, causing Plaintiff's attorney to travel to Washington, D.C. and then have to cancel the depositions. Plaintiff seeks to recover the fees and expenses involved in its attorney's travel. The record indicates that, during the relevant time period, the parties were engaged in discussions regarding the proper content and wording of a protective order.[4] The depositions at issue were scheduled to begin on October 15, 2007, but they were later moved to October 16, 2007. The record reflects that Defendants' counsel advised Plaintiff's counsel approximately one week before the scheduled depositions at issue that there were "many other documents to be produced subject to the protective order being negotiated by the parties."

---

[4] The parties, at approximately 3:00 p.m. on October 15, 2007, agreed to and executed the protective order.

On October 15, 2007, the day before the depositions were scheduled, the attorneys for each side exchanged emails regarding the document production and the scheduled deposition. The email exchange established the following. Defense counsel again advised Plaintiff's attorney that Defendants would be producing "a substantial number of documents" subject to the protective order and questioned whether the depositions should be rescheduled in order for Plaintiff's attorney to have time to review those "protective order documents." Plaintiff's attorney responded that it made no sense to take the depositions without having reviewed the documents. Defense counsel stated that he would attempt to have the documents by October 16, the date the depositions were scheduled. Plaintiff's counsel inquired about the number of documents to be produced, and defense counsel estimated that there were approximately 14,000 pages. Plaintiff's counsel stated that he would probably need an entire day to review that many pages of documents and suggested moving the depositions to October 17. Defense counsel agreed to postpone the depositions.

Approximately an hour later, Plaintiff's attorney asked if the documents could be delivered that night to his hotel in DC. Defense counsel responded that he could send a DVD of the documents to counsel's hotel, but that the documents were in electronic format and Defendant would need to have a copy service print and Bates number the hard copies. Defense counsel committed to obtain the copes and have them

delivered to Plaintiff's attorney in DC "whenever they are done." Plaintiff's attorney flew to DC on the last flight out of Houston on October 15, 2007.

On October 16, 2007, defense counsel advised Plaintiff's attorney that the hard copies were being picked up by a courier for delivery. Defense counsel also advised Plaintiff's attorney that some additional documents would be forthcoming. Plaintiff's attorney returned to Houston.

### C.  Defendants' Allegations Regarding Plaintiff's Discovery Abuse

Defendants allege that Plaintiff failed to notify them that the GlucoPhone portal had been completely lost (in a computer crash in March 2007) until October 29, 2007, the day Defendants were scheduled to inspect the portal. A Healthpia technical employee had flown to Houston to inspect the portal, and Defendants want Plaintiff to pay the costs incurred in flying the employee to Houston. Plaintiff responds that it should not be required to pay the costs because Defendants failed to advise them that they were bringing an employee to conduct the inspection.

### D.  Analysis and Decision

The Court has broad discretion under Rule 37(d) to determine whether to impose sanctions and, if sanctions are to be imposed, to fashion a suitable sanction. *See Frost v. Fort Worth Ind. Sch. Dist.*, 5 F.3d 1495, *3 (5th Cir. Sept. 22, 1993). The Court, in an exercise of its discretion, declines to impose sanctions against either party.

Plaintiff's counsel knew when he boarded the airplane to Washington, D.C. that he was going to receive a significant number of documents shortly before the depositions were scheduled to begin. Plaintiff's counsel elected nonetheless to fly to D.C. and then to cancel the depositions once he arrived.

Although Plaintiff clearly should have informed Defendants that the portal had been lost in the computer crash soon after it occurred, Defendants did not advise Plaintiff that they intended to bring – at some expense – a technical employee to participate in the inspection of the portal. Moreover, under the applicable protective order, it is far from clear that the employee – a Healthpia employee – would have been permitted to inspect the portal even if it were still available for inspection.

The Court is unpersuaded that Rule 37(d) sanctions should be imposed on any party. Each party has produced discovery or conveyed information in an incomplete or lax manner on certain occasions. The parties' focus on criticizing the other side, rather than on complying with their own discovery responsibilities in timely and complete ways, is not productive. But the Court finds the conduct is not sanctionable under the facts presented. There is material fault on both sides. The Court declines to sanction either party.

## IV.  CONCLUSION AND ORDER

There is no evidence of "bad faith" on the part of either party that would warrant an instruction on spoliation.  The conduct by both sides discussed herein is questionable; all parties have been remiss in fulfilling their own discovery obligations and keeping the opponent informed of pertinent matters.  The parties, however, are too quick to criticize the other side for any infraction of the discovery rules.  The Court, in an exercise of its discretion, declines to impose sanctions against either party.  Accordingly, it is hereby

**ORDERED** that the Plaintiff's Motion for Sanctions (Spoliation and Discovery Abuse) [Doc. # 78] and Defendants' Motion for Sanctions (Spoliation and Discovery Abuse) [Doc. # 128] are **DENIED**.

SIGNED at Houston, Texas, this **5th** day of **February, 2008**.

_____
Nancy F. Atlas
United States District Judge