IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| DIABETES CENTERS OF AMERICA, INC., § | | |
|     Plaintiff, § | | |
| § | | |
| v. § | | CIVIL CASE NO. H-06-3457 |
| § | | |
| HEALTHPIA AMERICA, INC., *et al.*, § | | |
|     Defendants. § | | |

## MEMORANDUM AND ORDER

This case is before the Court on the Motion to Exclude the Testimony of Defendants' Expert Witness Daniel Wittels ("Motion to Exclude Wittels") [Doc. # 98] filed by Plaintiff Diabetes Centers of America, Inc. ("DCOA"), the Motion to Strike the Opinions of Plaintiff's Damages Expert, Richard Domercq ("Motion to Exclude Domercq") [Doc. # 104] filed by Defendants Healthpia America, Inc. ("Healthpia") and Steven Kim, and Defendants' Motion to Strike the Opinions of Plaintiff's Patent Search Expert, Michael A. O'Neil ("Motion to Exclude O'Neil") [Doc. # 106].[1] Based on the Court's review of the record and the application of governing legal authorities, the Court **grants** all three motions.

---

[1] Defendants filed their Opposition [Doc. # 160] to the Motion to Exclude Wittels, and Plaintiff filed a Reply [Doc. # 169]. Plaintiff filed a Response [Doc. # 144] to the Motion to Exclude Domercq, and Defendants filed a Reply [Doc. # 173]. Plaintiff filed a Response [Doc. # 141] to the Motion to Exclude O'Neil, and Defendants filed a Reply [Doc. # 172].

I. **GENERAL FACTUAL AND PROCEDURAL BACKGROUND**

The factual background of this case has been set forth fully in prior opinions issued by the Court. Briefly, DCOA is a full-service treatment center for persons with diabetes. Healthpia is a company that develops and markets mobile healthcare devices, and Steven Kim is Healthpia's Chief Executive Officer. One of Healthpia's products, the GlucoPhone, is a cell phone that can test and read a patient's glucose levels, store the test results, and transmit the test results to physicians or others designated by the patient.

DCOA and Healthpia were interested in integrating Healthpia's GlucoPhone technology into DCOA's diabetes treatment practice. Consequently, in early 2006, the two companies entered into a Distribution and Services Agreement ("DSA") and a Stock Purchase Agreement ("SPA"). The parties encountered several problems and, eventually, the business relationship deteriorated and ended. DCOA then filed this breach of contract lawsuit against Healthpia alleging, *inter alia*, that Healthpia failed to deliver the GlucoPhones and otherwise failed to comply with the parties' written contracts. Healthpia filed counterclaims, and the case has been the subject of repeated discovery and other disputes.

Defendants seeks to exclude the testimony of Plaintiff's damages expert. Defendants also seek to exclude Plaintiff's "patent search" expert. Plaintiff seeks to

exclude the testimony of Defendants' rebuttal expert on the "patent search" issue. The motions have been fully briefed and are ripe for decision.

## II.   GENERAL STANDARD FOR EXCLUSION OF EXPERT WITNESS

"[A] witness qualified as an expert by knowledge, skill, experience, training, or education, may testify . . . in the form of an opinion or otherwise, if (1) the testimony is based upon sufficient facts or data, (2) the testimony is the product of reliable principles and methods, and (3) the witness has applied the principles and methods reliably to the facts of the case." FED. R. EVID. 702.  The district court is required to make a "preliminary assessment of whether the reasoning or methodology underlying the testimony is scientifically valid [reliability] and of whether that reasoning or methodology can be applied to the facts at issue [relevance]." *Skidmore v. Precision Printing And Packaging, Inc.*, 188 F.3d 606, 617 (5th Cir. 1999) (citing *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579, 592-93 (1993)).  This so-called "gate-keeping" obligation applies to all types of expert testimony, not just "scientific" testimony. *Id.* at 617-618 (citing *Kumho Tire Co. v. Carmichael*, 526 U.S. 137, 147 (1999)). The district court's responsibility "is to make certain that an expert, whether basing testimony upon professional studies or personal experience, employs in the courtroom the same level of intellectual rigor that characterizes the practice of an expert in the relevant field." *Kumho*, 526 U.S. at 151.  The Court "must ensure the expert

uses reliable methods to reach his opinions; and those opinions must be relevant to the facts of the case." *Guy v. Crown Equipment Corp.*, 394 F.3d 320, 325 (5th Cir. 2004).

## III.   **RICHARD DOMERCQ**

Domercq is Plaintiff's designated expert on damages. In his Supplemental Report, Domercq estimated that DCOA suffered lost profits ranging from approximately $56 million to approximately $71 million. *See* Domercq's Supplemental Report, Exh. 2 to Motion to Exclude Domercq, p. 3. The starting point for his lost profits calculation was DCOA's projection of the number of its patients who would have used the GlucoPhone. DCOA had at most 7,000 patients in 2006 and approximately 10,000 patients in 2007. DCOA projected that it would have had 284,000 patients in 2007 if it were using the GlucoPhone, and would have had 380,000 in 2008. Domercq conducted no independent research[2] into whether the projected figures given to him by DCOA were valid, or even reasonable.[3] Indeed, he testified in deposition that he was not sure how the projected numbers were developed or who

---

[2]   In his declaration in opposition to Defendants' motion, Domercq states that he "independently conducted research" but the only conduct related to the patient number projections was to "converse[] with Dr. Angelides, DCOA's Chairman, on numerous occasions . . .." *See* Domercq Declaration, Exh. 1 to Plaintiff's Response [Doc. # 144], ¶ 10.

[3]   Domercq also accepted DCOA's projection that the combined percentage of Medicare and Medicaid patients would increase from approximately 2% in 2006 to approximately 62% in 2007. His research into the market acceptance of the GlucoPhone was limited to talking to "one friend of [his] who has diabetes." *See* Domercq Depo., Exh. 7 to Motion to Exclude Domercq, p. 80.

developed them.  *See* Domercq Depo., Exh. 7 to Motion to Exclude Domercq, pp. 74-75.

Although a challenge to the factual basis for a proffered expert opinion often goes to weight rather than to admissibility, the Fifth Circuit has noted that the source of information relied upon can be of "such little weight that the jury should not be permitted to receive that opinion."  *See Sportsband Network Recovery Fund, Inc. v. PGA Tour, Inc.*, 136 F.3d 1329, 1998 WL 44564, *10 (5th Cir. Jan. 30, 1998).  In this case, Domercq simply accepted DCOA's projection that their number of patients would increase from 7,000 in 2006 to 284,000 in 2007.[4]  The Federal Rules of Evidence and the requirements of *Daubert* are not satisfied where, as here, the expert fails to show any basis for believing someone else's projections.  *See, e.g., JRL Enters., Inc. v. Procorp Assocs., Inc.*, 2003 WL 21284020, *7 (E.D. La. June 3, 2003) (court excluded testimony on lost profits where proffered expert failed to conduct any independent research to determine whether the projections given him by the plaintiff were accurate or reliable).  As a result, the Court concludes that Domercq's opinion on lost profits –

---

[4] Plaintiff notes that Domercq did not simply adopt DCOA's projections but, instead, reduced the projected numbers by 50%.  There is no explanation for reducing the projections by half, and the reduced numbers are no less arbitrary and unsupported by any independent analysis than DCOA's original projected numbers.

based on DCOS's projected numbers – must be excluded as so speculative and unreliable that it would not assist the jury. *See id.*

Domercq also offered the opinions that DCOA paid for GlucoPhones that they did not receive and that DCOA paid an inflated price for Healthpia stock. The first opinion is simply a restatement of the fact that DCOA paid for a certain number of GlucoPhones and received fewer than they paid for. The second opinion is based on a comparison of the price DCOA paid for the Healthpia stock and the price at which Healthpia recently offered the stock. Neither of these "opinions" require expert testimony.

## IV.    MICHAEL O'NEIL AND DANIEL WITTELS

Michael O'Neil is a patent attorney who has extensive experience preparing patent applications and litigating patent disputes. He was retained by Plaintiff in this case to provide opinions regarding (1) representations and warranties Defendants made to Plaintiff; (2) Healthpia's duty to investigate any infringement issues involving the GlucoPhone; and (3) whether an adequate search would have revealed the existence and relevance of patents issued to Health Hero Network, Inc. ("Health Hero").[5]

---

[5]    O'Neil was also asked to provide an opinion regarding Defendants' unfair competition, trademark infringement, and trademark dilution. These claims, however, have been dismissed by agreement of the parties.

The representations and warranties made by Defendants to Plaintiff are contained in written documents, including the July 2005 Business Plan and the SPA. It is the Court's duty in the first instance to construe the meaning of the written documents as a matter of law if they are unambiguous. *See, e.g., Burlington Northern and Santa Fe Ry. Co. v. South Plains Switching, Ltd.*, 174 S.W.3d 348, 356 (Tex. App. – Fort Worth 2005). If the Court determines that the language in the documents is ambiguous, the jury can read and determine the proper meaning of the documents without expert assistance. Indeed, O'Neil testified in his deposition that the documents "must be read through the eyes of an unsophisticated, uncounseled person." *See* O'Neil Depo., Exh. 6 to Motion to Exclude O'Neil, p. 93. He testified clearly that the language is not "directed at lawyers" but is, instead, "directed at the general public." *See id.* Because O'Neil's opinions on the content of the written documents would not assist the trier of fact, the Court concludes that the testimony would waste time and likely cause confusion. Consequently, the opinions on this issue are excluded.

O'Neil opines that Defendants had a duty to conduct certain investigations and that the failure to do so constituted "reckless disregard as to the truth" of the representations and warranties that he opines Defendants made in the written documents. To the extent O'Neil offers an opinion as to the existence of a *legal* duty that Defendants owed to Plaintiff, his testimony is excluded. An expert opinion giving

legal conclusions is inadmissible. *See, e.g., United States v. $9,041,598.68*, 163 F.3d 238, 255 (5th Cir. 1998).

Plaintiff argues, however, that O'Neil is offering an opinion regarding Defendants' "duty" not as a legal conclusion, but using the term in its "lay factual sense to give his opinion on the import of Defendants' representations to DCOA." *See* Response [Doc. # 141], p. 2. To the extent Plaintiff means that O'Neil will offer opinion testimony that the written documents impose any specific duty on Defendants, the testimony is excluded. As is discussed above, if the documents are unambiguous, they will be construed by the Court as a matter of law. If the Court concludes that the documents are ambiguous, the jury can determine what duties they impose without expert testimony. O'Neil's testimony regarding any duty Defendants may have had under the written documents is excluded.

O'Neil has also offered the opinion that "an adequate search would have identified the Health Hero patents and claims . . . ." *See* O'Neil Report, Exh. 1 to Motion to Exclude O'Neil, p. 7. The Court excludes this opinion for two fundamental reasons. First, Plaintiff has not demonstrated that O'Neil is qualified to offer the opinion. He has never been a patent examiner, and has not conducted a patent search since 1963. He described the patent search process as involving a trip to the Patent and Trademark Office ("PTO")'s "stacks" when one would "pull the stack of patents off

the shelf, and . . . go through them one by one." *See* O'Neil Depo., pp. 74-75. He did not know at the time of his deposition whether the patent search process is now computerized. *See id.* at 75. He was only "generally" familiar with the PTO's patent classification system. *See id.* at 72. Although he is an experienced patent attorney, O'Neil does not possess the necessary training or experience to offer expert testimony on the issue of patent searches.

As a second basis for excluding the opinion regarding what a patent search would have revealed, the testimony is unreliable. O'Neil has not performed – or had performed at his direction – a patent search to determine whether the Health Hero patent would have been located. O'Neil testified in his deposition that conducting patent searches is "an inexact science" and that "it is simply not possible" to determine whether a search has revealed "every single piece of relevant prior art." *See id.* at 64. Testimony that a search "would have revealed" any single piece of relevant prior art is even less reliable.

The Court excludes O'Neil's opinions regarding the content and meaning of the written documents at issue in this case, any duty on the part of Defendants to conduct certain investigations, and whether a patent search would have revealed the Health Hero patents.

Daniel Wittels is an expert retained by Defendants to rebut the expert opinions offered by O'Neil. Wittels has seventeen years of experience in the areas of patent prosecution and patent searching. He spent ten years as a Patent Examiner in the PTO, and has been in private practice for the past six years conducting patent searches for clients. Because the Court has excluded O'Neil's opinions, however, there is nothing for Wittels to rebut. Consequently, Wittels's testimony is excluded as no longer relevant.

## V. CONCLUSION AND ORDER

Domercq's proffered opinions on Plaintiff's damages are not supported by any independent analysis or verification and, consequently, are not admissible under governing Fifth Circuit authority. O'Neil's proffered opinions are inadmissible either because they are not relevant to any fact issue in the case or because O'Neil lacks the specific qualifications necessary to render the opinions. Absent expert testimony from O'Neil, there is nothing for Wittels to rebut and his testimony is, therefore, excluded as irrelevant. Accordingly, it is hereby

**ORDERED** that Plaintiff's Motion to Exclude the Testimony of Defendants' Expert Witness Daniel Wittels [Doc. # 98], Defendants' Motion to Strike the Opinions of Plaintiff's Damages Expert, Richard Domercq [Doc. # 104], and Defendants'

Motion to Strike the Opinions of Plaintiff's Patent Search Expert, Michael A. O'Neil [Doc. # 106] are **GRANTED**.

SIGNED at Houston, Texas, this **11th** day of **February, 2008**.

_____
Nancy F. Atlas
United States District Judge