## IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF TEXAS
## HOUSTON DIVISION

|  |  |  |
|---|---|---|
| DIABETES CENTERS OF AMERICA, | § | |
| INC., | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | CIVIL CASE NO. H-06-3457 |
| | § | |
| HEALTHPIA AMERICA, INC., *et al.*, | § | |
| Defendants. | § | |

## MEMORANDUM AND ORDER

This case is before the Court on Plaintiff Diabetes Centers of America, Inc.'s

Motion for Partial Summary Judgment on Defendants' Affirmative Defenses ("Motion

on Affirmative Defenses") [Doc. # 94], Plaintiff's Motion for Partial Summary

Judgment ("Plaintiff's Motion") [Doc. # 96], and Defendants Healthpia America, Inc.

("Healthpia") and Steven Kim's Amended Motion for Partial Summary Judgment

("Defendants' Motion") [Doc. # 166].[1]  Based on the Court's review of the full record

in this case and the application of governing legal authorities, the Court **grants** the

three Motions in part and **denies** them in part, as explained more fully herein.

---

[1]     Defendants filed their Opposition [Doc. # 154] to the Motion on Affirmative Defenses and
Plaintiff filed a Reply [Doc. # 170].  Defendants filed their Opposition [Doc. # 157] to
Plaintiff's Motion and Plaintiff filed a Reply [Doc. # 171].  Plaintiff filed a Response [Doc.
# 148] to Defendants' Motion and Defendants filed a Reply [Doc. # 175].

## I.    <u>BACKGROUND</u>

Diabetes Centers of America, Inc. ("DCOA") is a full-service treatment center for individuals with diabetes.  Healthpia is a company that develops and markets mobile healthcare devices.  Steven Kim was at all relevant times Healthpia's President and Chief Executive Officer.

One of Healthpia's primary devices, the GlucoPhone, is a cell phone that can test and read a patient's glucose levels, store the test results, and transmit the test results to physicians or others designated by the patient.  In early 2006, DCOA expressed interest in collaborating with Healthpia, including investing in Healthpia and purchasing GlucoPhones.  Following negotiations and due diligence undertakings, the parties entered into a Distribution and Services Agreement ("DSA"), a Stock Purchase Agreement ("SPA"), and Investors' Rights Agreement ("IRA") and a Right of First Refusal and Co-Sale Agreement ("RFRA").

The DSA included the parties' expression of a desire to work together to promote and market the GlucoPhone, including an investment in Healthpia by DCOA. The SPA provided for Healthpia to sell and DCOA to purchase one million shares of Healthpia stock at $1.00 per share.  The IRA required Healthpia to give DCOA prior written notice of any offer to sell or transfer Healthpia stock, and the RFRA granted DCOA certain rights of first refusal in connection with the transfer of Healthpia stock.

The parties also executed a Purchase Order dated April 16, 2006 ("Purchase Order") providing for DCOA to purchase GlucoPacks and compatible phones. These agreements will be discussed more fully in connection with the various claims asserting breach by the opposing party.

Health Hero, a company unrelated to DCOA and Healthpia, sent Healthpia a letter dated September 13, 2006. *See* Health Hero Letter, Exh. T to Plaintiff's Supplemental Appendix [Doc. # 150]. In the letter, Health Hero suggested that Healthpia's products might infringe one or more Health Hero patents. Health Hero noted that it did not have detailed information regarding Healthpia's products and that its "thinking may therefore change as [it learns] more about them."[2]  *See id.*

DCOA filed this lawsuit alleging that it ordered GlucoPhones from Healthpia, and that the phones were not delivered as required by the parties' written contract. Plaintiff currently has four breach of contract claims. Plaintiff alleges that Defendants breached the SPA, the IRA and the RFRA, the Purchase Order, and the DSA. Plaintiff's current claims also include a common law fraud and fraudulent inducement claim, and a negligent misrepresentation claim based on the Health Hero letter.[3]  In

---

[2]     It is undisputed that Health Hero has neither entered into a licensing agreement with Healthpia nor filed a lawsuit asserting that Healthpia is infringing its patents.

[3]     Plaintiff also has pending a claim for a constructive trust, for specific performance, for attorneys' fees, and for injunctive relief.

addition to denying Plaintiff's claims, Defendant asserted the following affirmative defenses: assumption of the risk; contributory negligence; waiver and estoppel; fraud; laches; unclean hands; and failure to mitigate damages.[4]

Healthpia filed a counterclaim alleging that it entered into a joint development arrangement with DCOA to develop the GlucoPhones. Healthpia alleges that DCOA fraudulently induced it to enter into a Confidential Disclosure Agreement ("CDA") under which Healthpia would make available to DCOA all of Healthpia's proprietary and confidential information on the GlucoPhone. Healthpia alleges that DCOA breached its fiduciary duty of good faith and fair dealing; engaged in fraud and negligent misrepresentation; interfered, intentionally and negligently, with Healthpia's prospective business relationships; violated § 16.29 of the Texas Business and Commerce Code; breached the CDA and the DSA; and engaged in a "breach of confidence."

DCOA seeks summary judgment on two of its breach of contract claims, on Defendants' affirmative defenses, and on most of Defendants' counterclaims.[5] Defendants seek summary judgment on each of Plaintiff's affirmative claims except

---

[4]     Defendants also asserted but have since withdrawn the affirmative defense of accord, satisfaction, and novation.

[5]     Plaintiff did not seek summary judgment on Defendants' fraudulent inducement counterclaim.

the claim for breach of the Purchase Order.  On that claim, Defendants seek summary

judgment that Plaintiff waived the July 31, 2006 delivery date.  The pending motions

have been fully briefed and are ripe for decision.

## II.     SUMMARY JUDGMENT STANDARD

Rule 56 of the Federal Rules of Civil Procedure mandates the entry of summary

judgment, after adequate time for discovery and upon motion, against a party who

fails to make a sufficient showing of the existence of an element essential to the

party's case, and on which that party will bear the burden at trial.  *Celotex Corp. v.*

*Catrett*, 477 U.S. 317, 322 (1986); *Little v. Liquid Air Corp.,* 37 F.3d 1069, 1075 (5th

Cir. 1994) (en banc); *see also Baton Rouge Oil and Chem. Workers Union v.*

*ExxonMobil Corp.,* 289 F.3d 373, 375 (5th Cir. 2002).   In deciding a motion for

summary judgment, the Court must determine whether "the pleadings, depositions,

answers to interrogatories, and admissions on file, together with any affidavits filed

in support of the motion, show that there is no genuine issue as to any material fact

and that the moving party is entitled to judgment as a matter of law."  FED. R. CIV. P.

56(c); *Celotex Corp.*, 477 U.S. at 322–23; *Hart v. Hairston*, 343 F.3d 762, 764 (5th

Cir. 2003).

For summary judgment, the initial burden falls on the movant to identify areas

essential to the non-movant's claim in which there is an "absence of a genuine issue

of material fact." *Lincoln Gen. Ins. Co. v. Reyna*, 401 F.3d 347, 349 (5th Cir. 2005). The moving party, however, need not negate the elements of the non-movant's case. *See Boudreaux v. Swift Transp. Co.*, 402 F.3d 536, 540 (5th Cir. 2005). The moving party may meet its burden by pointing out "'the absence of evidence supporting the nonmoving party's case.'" *Duffy v. Leading Edge Products, Inc.*, 44 F.3d 308, 312 (5th Cir. 1995) (quoting *Skotak v. Tenneco Resins, Inc.,* 953 F.2d 909, 913 (5th Cir. 1992)).

If the moving party meets its initial burden, the non-movant must go beyond the pleadings and designate specific facts showing that there is a genuine issue of material fact for trial. *Littlefield v. Forney Indep. Sch. Dist.*, 268 F.3d 275, 282 (5th Cir. 2001) (internal citation omitted). "An issue is material if its resolution could affect the outcome of the action. A dispute as to a material fact is genuine if the evidence is such that a reasonable jury could return a verdict for the nonmoving party" *DIRECT TV Inc. v. Robson*, 420 F.3d 532, 536 (5th Cir. 2006) (internal citations omitted).

In deciding whether a genuine and material fact issue has been created, the facts and inferences to be drawn from them must be reviewed in the light most favorable to the nonmoving party. *Reaves Brokerage Co. v. Sunbelt Fruit & Vegetable Co.*, 336 F.3d 410, 412 (5th Cir. 2003). However, factual controversies are resolved in favor of the non-movant "only when there is an actual controversy—that is, when both

parties have submitted evidence of contradictory facts." *Olabisiomotosho v. City of Houston,* 185 F.3d 521, 525 (5th Cir. 1999).  The non-movant's burden is not met by mere reliance on the allegations or denials in the non-movant's pleadings.  *See Diamond Offshore Co. v. A&B Builders, Inc.*, 302 F.3d 531, 545 n.13 (5th Cir. 2002). Likewise, "unsubstantiated or conclusory assertions that a fact issue exists" do not meet this burden. *Morris v. Covan World Wide Moving, Inc.*,  144 F.3d 377, 380 (5th Cir. 1998).  Instead, the nonmoving party must present specific facts which show "the existence of a 'genuine' issue concerning every essential component of its case." *Id.* In the absence of any proof, the court will not assume that the non-movant could or would prove the necessary facts. *Little*, 37 F.3d at 1075 (citing *Lujan v. Nat'l Wildlife Fed'n*, 497 U.S. 871, 888 (1990)).

Affidavits cannot preclude summary judgment unless they contain competent and otherwise admissible evidence.  *See* FED. R. CIV. P. 56(e); *Love v. Nat'l Medical Enterprises*, 230 F.3d 765, 776 (5th Cir. 2000); *Hunter-Reed v. City of Houston*, 244 F. Supp. 2d 733, 745 (S.D. Tex. 2003).   A party's self-serving and unsupported statement in an affidavit will not defeat summary judgment where the evidence in the record is to the contrary.  *See In re Hinsely*, 201 F.3d 638, 643 (5th Cir. 2000).

## III.   PLAINTIFF'S CLAIMS

Plaintiff asserts four breach of contract claims against Defendants.  Count I involves the SPA, Count II involves the IRA and the RFRA, Count III involves the Purchase Order, and Count IV involves the DSA.  Plaintiff has dismissed Counts V-IX.  Plaintiff alleges in Count X that Defendants engaged in common law fraud and fraudulent inducement, and alleges in Count XI that Defendants are liable for negligent misrepresentation.  In Count XII, Plaintiff seeks a constructive trust on the proceeds received by Defendants in connection with the parties' business relationship.  In Count XIII, Plaintiff seeks specific performance of the RFRA and the IRA; in Count XIV, Plaintiff seeks attorneys' fees; and in Count XV, Plaintiff seeks an injunction to preserve the status quo to protect assets for payment of any judgment it obtains against Defendants and to enjoin trademark infringement.[6]

## A.    **Health Hero-Based Claims**

Plaintiff's claims that Defendants breached the SPA, committed fraud and fraudulent inducement, and engaged in negligent misrepresentation are based on the September 13, 2006, letter from Health Hero.  Defendants seek summary judgment

---

[6]    The Court denies Plaintiff's request for a preliminary injunction to preserve assets and for a constructive trust during the pendency of the lawsuit.  Plaintiff included these requests only in the complaint and failed to pursue them during this litigation.  The Court also denies the request for injunctive relief in connection with the dismissed trademark claims.

on these three claims, arguing that Plaintiff has presented no evidence to support its assertion that it suffered any damages as a result of the Health Hero letter.

Plaintiff alleges that Healthpia represented in the SPA that it owned the legal rights to all the relevant intellectual property without any conflict or infringement. Plaintiff also alleges that Healthpia represented in the SPA that the products and services discussed therein did not violate any licenses or infringe any intellectual property rights of any other party.[7]   Plaintiff alleges that the Health Hero letter demonstrates that these representations were false.   Plaintiff also alleges that it suffered damages because the Health Hero letter caused "DCOA's investment in Healthpia [to be] substantially less valuable than its value would have been" if there were no infringement issues with Health Hero.   *See* Second Amended Complaint,

---

[7]     Contrary to Plaintiff's broad assertion, the SPA unambiguously provides that ***to Healthpia's knowledge***, it owned the relevant intellectual property and that the products were non-infringing.  *See* SPA, § 2.8.  The SPA unambiguously defines "knowledge" as "actual knowledge of the patent right or would be found to be on notice of such patent right as determined by reference to United States patent laws."  *Id.*  The unambiguous language limits Healthpia's representations and warranties to patent rights of which it had actual knowledge or actual notice at the time the contracts were executed.  The Court rejects Plaintiff's argument that Healthpia warranted against all patents on file with the United States Patent and Trademark Office, including those that were unknown, undiscoverable during a proper patent search, and irrelevant to Healthpia's product.  Because DCOA has failed to present evidence to raise a genuine issue of material fact regarding any damages resulting from the alleged breach, however, the Court need not address whether the Health Hero letter demonstrated a breach of the SPA or that Defendants engaged in fraud or negligent misrepresentation.

¶ 51; *see also* Plaintiff's Discovery Responses, Exh. 3 to Defendants' Motion [Doc. # 167], Response No. 18.

There is no evidence in the record that supports – directly or inferentially – that the value of Plaintiff's Healthpia stock was diminished as a result of the Health Hero letter.  Plaintiff paid $1.00 per share for the Healthpia stock in July 2006.  The only evidence in the record regarding subsequent valuation of the shares is that in the Spring and Summer of 2007, Healthpia sold its stock for $1.00 per share to investors who knew about Health Hero and its patents.  Plaintiff notes that there was an offer to purchase Healthpia shares in December 2007 for $.50 per share, but the sale was not finalized.  Moreover, Plaintiff has presented no evidence that the Health Hero letter in September 2006, rather than any other factor including the expense of this litigation, caused any alleged decrease in the value of Healthpia stock in December 2007.  Because Plaintiff has failed to present evidence to raise a genuine issue of material fact regarding its alleged damages or any causal connection between the alleged damages and the Health Hero letter, Defendants are entitled to summary judgment on the breach of the SPA claim, the fraud and fraudulent inducement claim, and the negligent misrepresentation claim.

### B. Breach of the IRA and RFRA

The IRA provides that, if DCOA owns more than 10% of Healthpia's outstanding stock, Healthpia may not hire executive officers or grant them stock options or stock awards without DCOA's prior approval. *See* IRA, Doc. # 97, Exh. C., § 5.4(g). The RFRA provides that DCOA has a right to notice of and to participate in any transfer of Healthpia stock. *See* RFRA, Doc. # 97, Exh. D, § 2.1. Plaintiff alleges that Defendants breached these provisions of the IRA and the RFRA by hiring Kathi O'Neill as President pursuant to an employment contract providing for stock ownership and by selling shares of stock to Logic Mobile, an unrelated third party, without giving Plaintiff notice and without Plaintiff's prior approval.[8]

Plaintiff's claim is fundamentally that it was deprived of its right to deny approval for the hiring and compensation of O'Neill and was denied its right to purchase additional shares in connection with the sale to Logic Mobile. Yet, throughout the discovery in this case, Plaintiff has maintained steadfastly that it would be "speculation" whether it would have disapproved the O'Neill decision. Similarly, Plaintiff has stated repeatedly during discovery that it does not know and cannot speculate regarding whether it would have purchased additional shares of Healthpia stock in connection with the sale to Logic Mobile. The party asserting a breach of

---

[8]     Plaintiff also alleges that Defendants breached the IRA by failing to provide certain financial information. Plaintiff claims that the breach had a negative impact on the value of Healthpia stock. As was discussed in more detail above, Plaintiff has presented no evidence to support its argument regarding any alleged decreased value of its Healthpia stock.

contract cannot maintain that claim without more than "speculation" regarding its alleged damages. *See, e.g., J.N. Taub v. Houston Pipeline Co.,* 75 S.W.3d 606, 617 (Tex. App. – Texarkana, 2002, review denied) (plaintiff must establish damages to a reasonable degree of certainty and the loss "cannot be left to speculation"); *Lexxus Intern., Inc. v. Loghry*, 512 F. Supp. 2d 647, 666 (N.D. Tex. 2007) (granting summary judgment in favor of defendant where plaintiff failed to raise genuine issue of material fact that it suffered damages as a result of the alleged breach of contract). Plaintiff alleges that it was damaged because it was denied its right to withhold approval of O'Neill's hiring and compensation, and because it was denied its right to purchase additional shares of Healthpia stock. Plaintiff has failed, however, to raise a fact dispute regarding these alleged damages because it has conceded that it can do no more than speculate regarding whether it would have exercised those rights if given notice. Defendants are entitled to summary judgment on Plaintiff's claim that they breached the IRA and the RFRA.[9]

### C.   **Breach of the DSA**

Plaintiff alleges that Defendants breached the DSA by using DCOA's trademarks in violation of the agreement. *See* Second Amended Complaint [Doc. #

---

[9]   Plaintiff in Count XIII seeks specific performance of the RFRA and the IRA, but there is nothing in the record to indicate that Healthpia is currently planning to hire new executives or to transfer shares of stock to third parties. Accordingly, the request for specific performance is denied.

49], ¶ 72.  Defendants moved to dismiss this claim based on Plaintiff's agreement to dismiss – and subsequent dismissal of – its trademark-related claims.  DCOA did not oppose this argument in its Response.   Accordingly, the Motion for Summary Judgment on Count IV, breach of the DSA, is granted.[10]

### D.    Waiver of July 31, 2006 Delivery Date for GlucoPhones

In connection with Count III – Plaintiff's claim that Defendants breached the Purchase Order – Defendants seek summary judgment only on the issue of whether Plaintiff waived the July 31, 2006 delivery date.  Plaintiff responds that it does not base its claim on Defendants' failure to deliver the phones by July 31, 2006.  As a result, there is no genuine issue of material fact regarding whether Plaintiff waived the July 31, 2006 delivery date and Defendants are entitled to summary judgment on this very limited issue.   The Court specifically does not decide on the current record whether Plaintiff waived any delivery date other than July 31, 2006.

### E.    Conclusion Regarding Plaintiff's Claims

Plaintiff's claim for breach of the Purchase Order remains pending, but the breach cannot be based on the failure to deliver phones by July 31, 2006.  Plaintiff's

---

[10]     Defendants also moved for summary judgment on Plaintiff's claim for lost profits resulting from the alleged breach of the DSA because the DSA contains a limitation of liability excluding damages for lost profits.  Plaintiff does not dispute that lost profits are not recoverable for breach of the DSA.  Instead, Plaintiff argues that it also seeks lost profits as damages resulting from the alleged breach of other contracts.  The dismissal of the DSA claim moots this argument.

claim for attorneys' fees also remains pending.  All other claims in the Second
Amended Complaint either have been dismissed voluntarily by Plaintiff or have been
dismissed on summary judgment in this Memorandum and Order.[11]

## IV.   DEFENDANTS' AFFIRMATIVE DEFENSES

Defendants assert several affirmative defenses in response to the claims in
Plaintiff's Second Amended Complaint.  These affirmative defenses include
assumption of the risk, contributory negligence, waiver and estoppel, fraud, laches,
unclean hands, and failure to mitigate.[12]  Plaintiff first moves to strike the affirmative
defenses as not adequately pleaded, but that motion is clearly untimely.  *See* Fed. R.
Civ. P. 12(f) (motion to strike should be made within twenty days after service of the
relevant pleading).  Plaintiff argues that the Court has discretion to strike inadequate
defenses "on its own initiative" after the twenty-day deadline has expired, but the
Court exercises its discretion against striking defenses that Plaintiff has not challenged
in a timely manner.

---

[11]    Having granted summary judgment in favor of Defendants on Plaintiff's breach of contract
claims involving the IRA, the RFRA, and the DSA, the Court denies Plaintiff's motion for
summary judgment on those claims.  Because there are extensive fact disputes regarding the
parties' obligations under the Purchase Order, the Court denies Plaintiff's motion for
summary judgment on that claim.

[12]    Defendants also asserted accord, satisfaction and novation as an affirmative defense, but
have since withdrawn that defense.

### A.   Assumption of the Risk, Contributory Negligence, Fraud and Unclean Hands

The Court has granted summary judgment on Plaintiff's claims except the breach of contract claim relating to the Purchase Order.  Consequently, there are no claims remaining to which the affirmative defenses of assumption of the risk, contributory negligence, and unclean hands would apply.  Defendants identify alleged fraudulent statements made by Plaintiff during the course of their relationship and assert in response to Plaintiff's summary judgment on the fraud defense only that they should be allowed to argue those fraudulent statements to the jury.  The Court notes that, as is discussed below, Defendants have a counterclaim for fraudulent inducement through which they can present the allegedly fraudulent statements.  Plaintiff is entitled to summary judgment on these affirmative defenses.

### B.   Laches

Defendants argue that DCOA unreasonably delayed asserting its rights under the Purchase Order.  The undisputed evidence establishes that the time between Defendants' failure to deliver the GlucoPhones in July 2006 and the filing of this lawsuit was just over three months.  Having conceded in this case that it was not insisting on compliance with the July 2006 deadline, however, Plaintiff cannot be held to have known that its rights under that agreement had been violated until Defendants' subsequent failure to deliver phones in October 2006.  This lawsuit was filed only two

weeks later on November 1, 2006.  This brief period of time does not under the circumstances of this case constitute "unreasonable delay" for the purposes of Defendants' laches defense.  *See, e.g., Gaynier v. Ginsberg*, 715 S.W.2d 749, 756 (Tex. App. – Dallas 1986, writ ref'd n.r.e.) ("unreasonable delay necessary to prevail upon the affirmative defense of laches cannot be charged against party until the party's cause of action has matured").  Plaintiff is entitled to summary judgment on Defendants' affirmative defense of laches.

### C.    Waiver, Estoppel, and Failure to Mitigate

Defendants assert as an affirmative defense that DCOA waived the requirement that Healthpia deliver a certain number of phones by a certain date, and waived any requirement that Healthpia obtain final approval from a wireless carrier before the GlucoPhones would be considered operable.  Defendants also assert that DCOA should be estopped from claiming that it has no responsibility for the costs associated with a CRM (customer relationship manager) and estopped from complaining that Healthpia failed to obtain any necessary approval from wireless carriers.  Defendants also assert that Plaintiff failed to mitigate any alleged damages.

Waiver "is an affirmative defense that can be asserted against a party who intentionally relinquishes a known right or engages in intentional conduct inconsistent with claiming that right."  *In re Acadia Ins. Co.*, __ S.W.3d __, 2007 WL 1976111,

*2 (Tex. App. – Amarillo 2007) (citing *Tenneco, Inc. v. Enterprise Prods. Co.*, 925 S.W.2d 640, 643 (Tex. 1996)).  The affirmative defense of estoppel requires proof of "(1) a false representation or concealment of material facts; (2) made with knowledge, actual or constructive, of those facts; (3) with the intention that it should be acted on; (4) to a party without knowledge or means of obtaining knowledge of the facts; (5) who detrimentally relies on the representations." *Johnson & Higgins of Texas, Inc. v. Kenneco Energy, Inc.*, 962 S.W.2d 507, 515-16 (Tex. 1998) (citing *Schroeder v. Texas Iron Works, Inc.*, 813 S.W.2d 483, 489 (Tex. 1991)).  Defendants have presented evidence that raises a fact dispute in connection with its affirmative defenses of waiver and estoppel as they relate to Plaintiff's remaining claim that Defendants breached the Purchase Order.  For example, Defendants have presented evidence that raises a genuine issue of material fact regarding whether Plaintiff waived, and should therefore be estopped to assert, any right to require delivery of a specific number of GlucoPhones by a particular date and any right to require that the GlucoPhones be approved by any wireless carrier.

Defendants have also presented evidence to raise a fact question regarding whether Plaintiff failed to mitigate any damages it claims were incurred as a result of Defendants' alleged breach of the Purchase Order.  Defendants argue that Plaintiff prematurely began an advertising campaign.  Defendants also argue that, while

claiming damages from "the costs associated with seeking suppliers of alternative diabetes cell phone devices in order to meet DCOA's obligations to third parties," DCOA continued to enter into contracts with third parties after this lawsuit was filed.

Plaintiff's Motion for Partial Summary Judgment on Defendants' Affirmative Defenses is **denied** as to the defenses of waiver, estoppel, and failure to mitigate damages, and is **granted** as to the other affirmative defenses.

## V.    DEFENDANTS' COUNTERCLAIMS

### A.    Breach of Duty of Good Faith and Fair Dealing/Fiduciary Duty

Defendants allege that Plaintiff owed them a fiduciary duty and a duty of good faith and fair dealing, and that Plaintiff breached those duties by taking actions to further Plaintiff's own interests at Defendants' expense.  DCOA seeks summary judgment on these counterclaims, arguing only that it did not owe Defendants a fiduciary duty or a duty of good faith and fair dealing.

"The elements of a breach of fiduciary duty claim are: (1) a fiduciary relationship between the plaintiff and defendant; (2) the defendant must have breached his fiduciary duty to the plaintiff; and (3) the defendant's breach must result in injury to the plaintiff or benefit to the defendant."  *Jones v. Blume*, 196 S.W.3d 440, 447 (Tex. App. – Dallas 2006, pet. denied).  A fiduciary owes a duty of good faith and fair dealing.  *See Crim Truck & Tractor v. Navistar Int'l Transp. Corp.*, 823 S.W.2d 591,

594 (Tex. 1992); *McConnell v. Ford & Ferraro, L.L.P.*, 2001 WL 755640, *3 (Tex. App. – Dallas 2001, pet. denied).

Healthpia alleges and has presented evidence that it entered into a joint venture with DCOA to develop the GlucoPhone for their mutual benefit.  Parties to a joint venture owe each other a fiduciary duty regarding their dealings within the scope of the joint venture.  *See Rankin v. Naftalis*, 557 S.W.2d 940, 944 (Tex. 1977).  Similarly, persons engaged in a joint venture, "or about to assume such relationship, owe to each other the utmost good faith and the must scrupulous honesty." *Fitz-Gerald v. Hull*, 237 S.W.2d 256, 265 (Tex. 1951).  Plaintiff's Motion for Summary Judgment on these two counterclaims is denied.

### B.   Fraud and Negligent Misrepresentation

Defendants allege that Plaintiff made material misrepresentations regarding its ability and willingness to fund the disease management service, and also misrepresented its true intent to take control of Healthpia and "raid Healthpia of its most valuable assets, its intellectual property." *See* Second Amended Counterclaim [Doc. # 91], ¶ 46.  Plaintiff seeks summary judgment on Defendants' fraud and negligent misrepresentation counterclaims, asserting that they are simply restatements of the breach of contract claim.  The Court agrees.

In determining whether a fraud claim sounds in contract or tort, the Court considers both the source of the duty and the nature of the remedy sought by the complaining party. *See Southwestern Bell Tel. Co. v. DeLanney*, 809 S.W.2d 493, 494 (Tex. 1991). The Court notes that the alleged misrepresentations made prior to the parties' contracts, such as those regarding the number of patients and Plaintiff's intent to cooperate with Healthpia in developing and marketing the GlucoPhone, are covered by the fraudulent inducement counterclaim not addressed in Plaintiff's Motion. The other alleged fraudulent representations raised in the fraud and negligent misrepresentation counterclaims relate to the parties' respective obligations under the various contracts, including responsibility for developing the CRM and for getting security and privacy assurances required by the wireless providers. These are more specific statements of the allegations in the breach of contract counterclaim, in which Defendants allege that Plaintiff failed to collaborate with Healthpia and failed to use its best efforts to promote and market the GlucoPhone. Because the contracts provide the source of the duty and the same remedy is sought in connection with the breach of contract claim, Plaintiff's Motion is granted as to the fraud and negligent misrepresentation claims.

### C.     Interference with Prospective Business Advantage

Defendants allege that Plaintiff interfered, intentionally and negligently, with Defendants' prospective business advantage by dissuading a potential investor from investing $3 million dollars in Healthpia.  Plaintiff seeks summary judgment on these counterclaims, arguing that it had a legal right to take the actions Healthpia alleges were taken.  Plaintiff also argues that Healthpia has presented no evidence that Plaintiff interfered with any prospective business advantage.

"[T]o recover for tortious interference with a prospective business relation a plaintiff must prove that the defendant's conduct was independently tortious or wrongful." *Wal-Mart Stores, Inc. v. Sturges*, 52 S.W.3d 711, 726 (Tex. 2001).  This does not require the plaintiff to prove an independent tort, only to prove that "the defendant's conduct would be actionable under a recognized tort." *Id.*  "The elements of negligent interference with prospective economic relations are the same as those for tortious interference, but with negligence replacing the element of intent." *Kinetic Concepts, Inc. v. Bluesky Med. Corp.*, 2005 WL 3068202,*4 (W.D. Tex. Nov. 1, 2005).

As was discussed above, Defendants have alleged and presented evidence to establish the existence of a fiduciary duty and a duty of good faith and fair dealing owed them by Plaintiff.  The conduct that Defendants claim was interfering could be

actionable as a breach of these duties.  As a result, summary judgment based on Plaintiff's argument that it had a legal right to interfere is unwarranted.

Defendants have presented evidence of a prospective business relationship with Chulho Kim, a potential investor from Korea.  Defendants have also presented evidence that raises a genuine fact issue regarding whether DCOA's conduct, whether negligent or intentional, interfered with that relationship and caused Chulho Kim to decide against investing in Healthpia.  Plaintiff's Motion for Summary Judgment on these counterclaims is denied.

### D.    Section 16.29

Section 16.29 of the Texas Business and Commerce Code provides that a person may sue to enjoin an act that is likely to injure a business or dilute a trademark. The statute provides only for injunctive relief, not for an award of damages.  Because Defendants in their Second Amended Counterclaim [Doc. # 91] do not seek injunctive relief pursuant to § 16.29, Plaintiff is entitled to summary judgment on Defendants' counterclaim for damages under § 16.29.

### E.    Breach of Contract and Breach of Confidence

Defendants allege that Plaintiff breached the parties' Confidential Disclosure Agreement ("CDA") and engaged in a "breach of confidence" by using Healthpia's

confidential and proprietary information for its own benefit.[13]  The elements of a

breach of contract claim are:  "(1) the existence of a valid contract; (2) performance

or tendered performance by the plaintiff; (3) breach of the contract by the defendant;

[and] (4) damages sustained as a result of the breach."  *Winchek v. Amer. Express*

*Travel Related Servs. Co., Inc.*, __ S.W.3d __, 2007 WL 1152647, *3 (Tex. App. –

Houston [1st Dist.] Apr. 19, 2007); *see also Mays v. Pierce*, 203 S.W.3d 564, 575

(Tex. App. – Houston [14th Dist.] 2006, pet. denied).  Texas courts recognize a cause

of action for misappropriation of confidential information that is either secret or

substantially secret.  *See Stewart & Stevenson Servs., Inc. v. Serv-Tech, Inc.*, 879

S.W.2d 89, 99 (Tex. App. – Houston [14th Dist.] 1994, writ denied).

Healthpia has alleged and presented evidence that Plaintiff obtained its

proprietary and confidential intellectual property, specifically the design and operating

system information for the GlucoPhone.  Healthpia has also alleged and presented

evidence that, having obtained the information, Plaintiff refused to perform its

obligations under the parties' contractual arrangement and engaged in other

misconduct to Healthpia's detriment.  It is Healthpia's position that Plaintiff set out

to obtain the proprietary information regarding the GlucoPhone and then to coerce

---

[13]     Defendants also allege that Plaintiff breached the DSA by, *inter alia*, failing to collaborate
with Healthpia to develop and market the GlucoPhone.  Plaintiff does not address this aspect
of the breach of contract counterclaim in its motion for summary judgment.

Healthpia into an arrangement in which Plaintiff would have a controlling interest in the owner of the intellectual property.  Healthpia's position is that, having failed to get Healthpia to agree to the proposed arrangement, Plaintiff now seeks to drive Healthpia out of business through this litigation.  The dispute in the evidence precludes summary judgment on these two counterclaims.

## VI.   CONCLUSION AND ORDER

For the reasons discussed herein, it is hereby

**ORDERED** that Plaintiff's Motion for Partial Summary Judgment on Defendants' Affirmative Defenses [Doc. # 94] is **GRANTED** as to the assumption of the risk, contributory negligence, fraud, laches, and unclean hands defenses and is **DENIED** in all other respects;

**ORDERED** that Plaintiff's Motion for Partial Summary Judgment [Doc. # 96] is **GRANTED** as to the § 16.29 claim, the fraud claim, and the negligent misrepresentation claim and is **DENIED** in all other respects; and

**ORDERED** that Defendants' Amended Motion for Partial Summary Judgment [Doc. # 166] is **GRANTED** as to claim 1 (breach of SPA), claim 2 (breach of the IRA and RFRA), claim 10 (common law fraud and fraudulent inducement), and claim 11 (negligent misrepresentation); **GRANTED** as to the waiver of the July 31, 2006 delivery date in connection with claim 3 (breach of Purchase Order); and **GRANTED**

as to the unavailability of lost profits damages in connection with claim 4 (breach of the DSA).

The parties are reminded that they are required to participate in good faith mediation prior to the **April 24, 2008** docket call.

SIGNED at Houston, Texas, this **6**[th] day of **March, 2008**.


_____

Nancy F. Atlas
United States District Judge